# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **KARINA RINSKY,** | ) |
| **Plaintiff,** | ) |
| **v.** | ) **Civil Action No. 10cv10779-NG** |
| | ) |
| **TRUSTEES OF BOSTON UNIVERSITY,** | ) |
| **TRUDY ZIMMERMAN, JUDITH PERLSTEIN,** | ) |
| **BRENDA KRAUS, TOWN OF BROOKLINE.,** | ) |
| **and RUTHANN DOBEK,** | ) |
| **Defendants.** | ) |

GERTNER, D.J.:

## MEMORANDUM AND ORDER RE: DEFENDANTS' MOTIONS TO DISMISS
December 27, 2010

## TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

II.  BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

III.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

IV.  DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
    A.  Count I: Violation of 42 U.S.C. § 1983 (against all defendants) . . . . . . -5-
    B.  University Defendants - State Action . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
    C.  The Town Defendants - "Person" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-
    D.  Dobek . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-
    E.  Count Ii: Violation of MCRA (against all defendants) . . . . . . . . . . . . -12-
    F.  Exclusive Remedy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
    G.  Threats, Intimidation, and Coercion . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
    H.  Count III: Assault and Battery (against Zimmerman, Perlstein, Kraus, and
        Dobek) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
    I.  Count IV: Civil Conspiracy (against Zimmerman, Perlstein, Kraus, and
        Dobek) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
    J.  Count VI: Negligence (against the University defendants) . . . . . . . . . -18-
    K.  Count VII: Negligent Infliction of Emotional Distress (against the
        University defendants) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-
    L.  Count VIII: Intentional Infliction of Emotional Distress (against
        Zimmerman, Perlstein, Kraus, and Dobek) . . . . . . . . . . . . . . . . . . . . . -20-
    M.  Count IX: Breach of Contract (against BU) . . . . . . . . . . . . . . . . . . . . -20-

      N.      Count X: Violation of Title IX of the Education Amendments of 1972
              (against BU,  Zimmerman, Perlstein, and Kraus) . . . . . . . . . . . . . . . . -22-

V.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

_____
|                                               |
| **KARINA RINSKY,**                     )      |
|     **Plaintiff,**                      )      |
|     **v.**                              ) **Civil Action No. 10cv10779-NG** |
|                                        )      |
| **TRUSTEES OF BOSTON UNIVERSITY,**     )      |
| **TRUDY ZIMMERMAN, JUDITH PERLSTEIN,** )      |
| **BRENDA KRAUS, TOWN OF BROOKLINE.,**  )      |
| **and RUTHANN DOBEK,**                 )      |
|     **Defendanst.**                     )      |

**GERTNER, D.J.:**

**MEMORANDUM AND ORDER RE: DEFENDANTS' MOTIONS TO DISMISS**
December 27, 2010

## I.    INTRODUCTION

Plaintiff Karina Rinsky ("Rinsky"), a former Boston University ("BU") social work student, has filed suit against two different groups of defendants involved with her internship at the Town of Brookline's Senior Center ("the senior center"). She sues her on-site supervisor Ruthann Dobek ("Dobek") and the Town of Brookline ("Brookline"), collectively known as the "Town defendants." Since her internship was a requirement of her Boston University ("BU") Master's program, she also sues her BU supervisors Trudy Zimmerman ("Zimmerman"), Judith Perlstein ("Perlstein"), Brenda Kraus ("Kraus"), and BU, collectively known as the "University defendants." Rinsky claims that the defendants dismissed her allegations of unwelcome touching by a senior center client, forced her to continue to work alone with this client, and, in so doing, became complicit in her continued sexual harassment. Both the University defendants and the Town defendants have filed motions to dismiss (documents ##3, 13), seeking to eliminate all but one of the ten counts Rinsky alleges.

Taking Rinsky's allegations as true, as I must at this stage, I accept the following: Rinsky's senior center supervisors assigned her to interact with a client who "would continuously force himself on [her] physically, hugging her, touching her and otherwise making physical contact with her person, including touching her breasts and rear end."  Compl. ¶ 31 (document #1-1).  She reported this harassment to both Dobek and her BU supervisors.  Dobek responded by assigning Rinsky to go to the client's room "alone, on numerous occasions," id. at ¶ 36, and telling her to "treat her humiliating sexual harassment . . . as a 'learning experience' for her career in social work and that she should just 'go with it,'" id. at ¶ 43.  Similarly, her BU supervisors stated that "if she brought up issues of sexual harassment at 'problem resolution meetings' designed to discuss internship issues, she would be demonstrating her lack of commitment to the social work profession."  Id. at ¶ 58.

One the one hand, I surely recognize that a social worker's job often requires her to deal with people who present mental and physical challenges.  On the other hand, the plaintiff was only a student, not yet a social worker; students are likewise entitled to work and educational environments free of sexual harassment and unwanted sexual touching.  How to reconcile the these issues is precisely what needs to be litigated in the case at bar, and cannot be resolved on a motion to dismiss.  For the reasons I discuss below, Defendants' Motions to Dismiss (docket #s 13 and 3) are **GRANTED IN PART** and **DENIED IN PART.**

## II.     BACKGROUND[1]

Rinsky was a social work student at BU from August 2006 through May 2007.  As part of her Masters in Social Work ("MSW") requirements, she interned at the senior center during

---

[1] This summary takes all of Rinsky's well-pleaded facts as true and makes all reasonable inferences in Rinsky's favor.  Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48-49 (1st Cir. 2009).

the 2006-2007 school year. The senior center was run by Brookline's Council on Aging, and Dobek was Rinsky's on-site supervisor. In addition, three people from BU -- Zimmerman, Perlstein, and Kraus -- monitored Rinsky's internship. Starting at some point during the school year and continuing until April 19, 2007, a mentally challenged client ("Client B") began to continuously touch Rinsky's breasts and buttocks and stalk her in the parking lot. When Rinsky reported Client B's harassment, Dobek belittled Rinsky's complaint, telling her that it was a "learning experience." Compl. ¶ 43. Furthermore, Dobek assigned Rinsky to work with Client B on a regular basis, alone in Client B's residence. Rinsky asked for "a reasonable accommodation that she not be placed alone with Client B, and provided a structured environment for her interactions with Client B," id. at ¶ 44, but Dobek denied this request until April 2007, mere days before the internship ended. It was only then that Dobek offered Rinsky a schedule change to avoid contact with Client B.

As the internship progressed and Rinsky continued to complain to Dobek that Client B was touching her, Dobek's evaluations of her became increasingly negative. Rinsky reported Client B's sexual harassment and Dobek's response to her BU supervisors (Zimmerman, Perlstein, and Kraus). While they instructed her to file a complaint with the Massachusetts Commission Against Discrimination ("MCAD"), they also told her that if she brought up her sexual harassment at problem resolution meetings, she would be demonstrating a "lack of commitment to the social work profession." Id. at ¶ 58. They did not transfer Rinsky to another internship or take any action to ensure that she would not be required to continue interacting with Client B.[2]

---

[2] Rinsky does not address in her complaint whether her BU supervisors spoke with Dobek.

Eventually, BU informed Rinsky that she had failed to maintain the requisite grades during her first semester, even though the handbook required a certain grade point average only at graduation, not each semester.  See id at ¶ 80.  On or around May 20, 2007, BU officials held a Status Review, during which Rinsky contested her performance evaluations.  Nonetheless, the University dismissed her.  Then, one year after she had left the program, a BU academic employee revealed in a class entitled, "Couples," privileged student information, referring to Rinsky as an example of a person who had "committed unethical conduct."  Id. at ¶ 74.[3]

Rinsky has now sued Dobek, her BU supervisors (Zimmerman, Perlstein, and Kraus), BU, and Brookline.  She alleges ten different causes of action, nine of which are challenged in motions to dismiss filed by the University defendants and the Town defendants.  Her ten claims are as follows:

**Count I:**    Violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments, against all defendants

**Count II:**    Violation of Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H, 11I, against all defendants

**Count III:**    Assault and Battery, against Zimmerman, Perlstein, Kraus, and Dobek

**Count IV:**    Civil Conspiracy, against Zimmerman, Perlstein, Kraus, and Dobek

**Count V:**    Invasion of Privacy, against BU (*not contested in University defendants' Motion to Dismiss*)

**Count VI:**    Negligence, against BU, Zimmerman, Perlstein, and Kraus

**Count VII:**    Negligent Infliction of Emotional Distress ("NIED"), against BU, Zimmerman, Perlstein, and Kraus

---

[3] How Rinsky learned of this disclosure is not explained in her complaint.  Similarly, Rinsky does not articulate what actions of hers were described as unethical.

| **Count VIII:** | Intentional Infliction of Emotional Distress ("IIED"), against Zimmerman, Perlstein, Kraus, and Dobek |
|---|---|
| **Count IX:** | Breach of Contract, against BU |
| **Count X:** | Violation of Title IX of the Education Amendments of 1972, against BU, Zimmerman, Perlstein, and Kraus |

## III.   STANDARD OF REVIEW

When ruling on a motion to dismiss, the Court must accept all well-pleaded facts as true and make all reasonable inferences in the plaintiff's favor.  Gargano, 572 F.3d at 48-49.  The Court may take into account documents "central to plaintiffs' claim" or "sufficiently referred to in the complaint" without converting a motion to dismiss into one for summary judgment. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  To survive defendants' motion to dismiss, Rinsky's complaint must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## IV.   DISCUSSION

### A.   Count I: Violation of 42 U.S.C. § 1983 (against all defendants)

Three essential elements for an action under § 1983 are that the alleged conduct 1) is committed by a "person," 2) "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia," and 3) "subjects, or causes to be subjected," a person to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983 (1996).  In this case, the critical issue for Brookline implicates the first prong; the University defendants, the second prong; and Dobek, the third prong.  For the foregoing reasons, Count I continues with respect to Dobek, but the § 1983 claims against the Town of Brookline, BU, Zimmerman, Perlstein, and Kraus are **DISMISSED**.

## B.    University Defendants - State Action

Under § 1983, a plaintiff may recover for civil rights violations against a "person" acting "'under color of' state law, which requires some kind of state action."  Ahanotu v. Mass. Turnpike Auth., 466 F. Supp. 2d 378, 396 (D. Mass. 2006).  BU and its employees are private parties, and private institutions meet the state action requirements "only in rare circumstances." Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005) (quoting Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992)).  While the analysis of whether BU, a private university, is a state actor should be straightforward, its relationship with the Town of Brookline through Rinsky's internship program raises some additional complexities.

A private party may be considered a state actor only if it satisfies one of three tests: (1) the state compulsion test, (2) the nexus/joint actor test, or (3) the public function test.  Estades-Negroni, 412 F.3d at 3; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 51-52 (1st Cir. 2009).  Under all three tests, Rinsky's § 1983 claim against the University defendants fails.

The state compulsion test considers whether "the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'"  Estades-Negroni, 412 F.3d at 6 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).  Here, Rinsky notes that having an internship was a requirement for obtaining a Masters in Social Work at BU.  However, she has pled no facts that even suggest that either BU or its personnel were acting pursuant to any governmental influence when designing their graduation requirements and curriculum or when assigning Rinsky to the senior center or responding to her complaints.  Nor has she even hinted that her internship had to be at a place run by a governmental rather than a private entity.

Rather, she implies that she selected a placement at the center because "the elderly . . . was the client population that was consistent with [her] professional research as well as interest in social work." Compl. ¶ 13. Therefore, Rinsky's § 1983 claim against the University defendants fails under the state compulsion test.

A private party may be considered a state actor under the nexus/joint actor test "where an examination of the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity].'" Estades-Negroni, 412 F.3d at 5 (quoting Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir. 1999). However, a private institution that associates with the state is not a state action unless there is "pervasive entwinement." Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 291 (2001); see also Rockwell v. Cape Cod Hosp., 26 F.3d 254, 258 (1st Cir. 1994) ("[E]ven extensive regulation, and the receipt of federal funds . . . are insufficient to establish that a hospital or other entity acted under color of state law."). In this case, successful completion of an internship was a BU graduation requirement. Compl. ¶¶ 59-60, 62. Nonetheless, while Rinsky's internship certainly demonstrates a level of cooperation between BU and Brookline, her complaint offers no reason to think that Brookline had insinuated itself into the social work program; the senior center was simply one of several programs on a list of potential internships. Indeed, it was Rinsky who ultimately selected the senior center. Therefore, Rinsky's § 1983 claim against the University defendants fails also under the nexus/joint actor test.

Finally, there is state action when a private party performs a function that has traditionally been the "exclusive prerogative" of the state. Jackson v. Metro. Edison Co., 419

U.S. 345, 353 (1974); see Estades-Negroni, 412 F.3d at 5. While many functions are traditional

state functions, few are "exclusively" governmental. See, e.g., Rendell-Baker v. Kohn, 457 U.S.

830, 842 (1982) (concerning the education of high school students); Hudgens v. NLRB, 424 U.S.

507, 519 (1976); Jackson, 419 U.S. at 352-53 (addressing a shopping center); Rockwell, 26 F.3d

at 258 ("The exclusive function test is related to situations where a state tries to escape its

responsibilities by delegating them to private parties."). In the case at bar, there is not the

remotest evidence that BU and its employees were co-opting an exclusive governmental function

in this case. Although social workers perform a public service, their enterprise is hardly the

exclusive domain of the state. See Terry v. Adams, 345 U.S. 461, 469 (1953) (finding that a

Texas county political organization, which claimed to be a private group, violated the Fifteen

Amendment by excluding non-white people from its primaries, noting that the organization

adopted "precisely the same qualifications as those prescribed by Texas entitling electors to vote

at county-operated primaries" and that the organization's primary was the "only election that has

counted in this Texas county for more than fifty years"). Therefore, Rinsky's § 1983 claim

against the University defendants similarly fails the public function test.

As BU, Zimmerman, Perlstein, and Kraus are private parties and Rinsky has provided no

justification for characterizing them as state actors in this case, Count I against the University

defendants is **DISMISSED.**

### C.    The Town Defendants - "Person"

As the Supreme Court announced in Monell v. Dep't of Soc. Serv., a municipality cannot

be held liable under § 1983 under a theory of *respondeat superior* or vicarious liability. 436

U.S. 658, 691 (1978); see also Salcedo v. Town of Dudley, 629 F. Supp. 2d 86, 104-05 (D.

Mass. 2009). Rather, a local government can be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694. The "policy or custom" may be explicit, or it can be inferred from 1) the decisions of high ranking "officials whose acts may fairly be said to be those of the municipality," Bd. of Cnty. Comm'r of Bryan County v. Brown, 520 U.S. 397, 403-04 (1997); 2) a "practice [that] is so widespread as to have the force of law," id. at 404; or 3) the government's failure to train, supervise, or discipline an employee, so long as the failure amounts to "deliberate indifference" to the rights of persons with whom the governmental employees come in contact, City of Canton v. Harris, 489 U.S. 378, 392 (1989); see DiRico v. City of Quincy, 404 F.3d 464, 468-69 (1st Cir. 2005).

No matter what the test, it is clear that the Town of Brookline did not function as a person within the meaning of § 1983 through the actions that Rinsky alleges. With respect to the first test, while municipal liability may be based on a single decision by a municipal official who has final policy-making authority, see City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988); Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986), that doctrine does not apply to the case at bar. A determination of whether or not the constitutionally problematic decision was made by someone in a position to make the official policy of the local governmental unit requires a review of the state and local law and the "'custom or usage' having the force of law." Jett v. Dallas, 491 U.S. 701, 737 (1989) (quoting Praprotnik, 485 U.S. at 124 n.1)).

Rinsky argues generally that a reasonable inference may be drawn from her complaint that Dobek is the "high ranking town official charged with making clinical client decision concerning activities at the senior center," given her "training in social work and her directing

the clinical work of interns."  Pl.'s Mem. Opp'n Defs. Town of Brookline's & Ruthann Dobek's

Mot. Dismiss 12 (document #16).  The problem is that her complaint provides absolutely nothing

to support such an inference.  It simply identifies Dobek as Rinsky's supervisor without

addressing Dobek's credentials, role on the Counsel of Aging, or placement within the Brookline

government's hierarchy.  In addition, Rinsky has provided to the Court no provisions of the

pertinent local or state laws, no town charter, and no procedural manuals to buttress her claims.

Given this complete dearth of information, Rinsky has failed to satisfy her obligation to provide

the grounds for her entitlement to relief on this theory – at least on this record.  See Fed. R. Civ.

P. 8(a)(2); Conely v. Gibson, 355 U.S. 41, 45-46 (1957).

　　　With respect to the second test, Rinsky has not alleged any widespread practice of

forcing social work students to continually work in an unprotected, isolated environment with

clients who sexually harass and assault them.  This issue is, therefore, moot.

　　　A failure to train, supervise, or discipline theory of municipal liability requires that the

government's failure evidences a "deliberate indifference."  Harris, 489 U.S. at 392.

Furthermore, where the "claim of municipal liability is predicated upon a failure to act, the

requisite degree of fault must be shown by proof of a background of events and circumstances

that establish that the 'policy of inaction' is the functional equivalent of a decision by the city

itself to violate the Constitution." Id. at 394-95.  In addition, the failure to train must bear a

"close causal connection to the violation of constitutional rights," lest the rule impose

prophylactic duties on municipal governments.  Id. at 395.

　　　Rinsky asserts that "the defendants," presumably Brookline, "failed to train their

employees in preventing such actions suffered by the plaintiff" and that "defendants' actions

were taken with deliberate or reckless disregard" to her rights.  Compl. ¶ 110-11.  But beyond this conclusory allegation, Rinsky offers no supporting facts; her failure to train theory necessarily fails.

In sum, since Rinsky has pled no facts upon which she could sustain a § 1983 claim against the town, Count I against Brookline is **DISMISSED**.

### D.      Dobek

Rinsky's case against Dobek faces none of the infirmities that plague the other defendants:  Dobek is a person; she was acting under the color of state law when supervising Rinsky in her internship; and Dobek's alleged actions constitute an infringement of Rinsky's constitutional rights.[4]  Indeed, Dobek seems to concede as much, basing her motion to dismiss only on a statute of limitations rationale.  The filing deadline for a § 1983 violation in Massachusetts derives from Mass. Gen. Laws ch. 260, § 2A, which provides for a three-year statute of limitations period for torts, including constitutional torts.

Rinsky filed her complaint in state court on January 15, 2010, and issued a summons  to the parties dated April 18, 2010.  Defendants argues that Rinsky's claim accrued in November 2006, when her internship began, thus suggesting that she had to have filed no later than November 2009.  Rinsky, conversely, asserts that her accrual date is the last day that Client B

---

[4] Rinsky alleges generally that her Fourteenth Amendment rights were violated, although she does not articulate the specific rights in her complaint.  In her briefing, she alludes to her substantive due process right to bodily integrity, which is actionable under § 1983.  See, e.g., Harrington v. Almy, 977 F.2d 37, 43-44 (1st Cir. 1992).  Moreover, as the Supreme Court held in Davis v. Passman, individuals have a constitutional right under the equal protection clause to be free from sex discrimination.  442 U.S. 228, 235 (1979); see Lipsett v. Univ. of P.R., 864 F.2d 881, 896 (1st Cir. 1988); Roche v. Town of Wareham, 24 F. Supp. 2d 146, 149 (D. Mass 1998).  And a violation of this constitutional right is actionable under § 1983 even if the conduct of which one claims is also covered by Title IX or Title VII.  Fitzgerald v. Barnstable Sch. Comm., 129 S.Ct. 788, 795-97 (2009); Ahanotu, 466 F. Supp. 2d at 397 (citing Annis v. Cnty. of Westchester, 36 F.3d 251, 254 (2d Cir. 1994) ("[E]very circuit that has considered this issue has held that Title VII is not the exclusive remedy for discrimination claims against state or municipal employers, where those claims derive from violations of Constitutional rights.")); Roche, 24 F. Supp. 2d at 149 n.4.

assaulted her, which she alleges was April 19, 2007, Compl. ¶ 39, meaning she had until April 19, 2010, to file.

Generally, § 1983 claims accrue when the plaintiff "knows or has reason to know of the injury which is the basis of the action." Street v. Vose, 936 F.2d 38, 40 (1st. Cir. 1991). The continuing violation doctrine, however, creates an equitable exception to the 3-year limitation in certain situations when the unlawful behavior is ongoing. Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1st Cir. 1998).[5]

The violation that Rinsky alleges was certainly continuing. Her proper accrual date is the last time she worked with Client B on April 19, 2007. Her claim is not time-barred. Defendant's motion to dismiss this Count I against Dobek is **DENIED**

### E.    Count II: Violation of MCRA (against all defendants)

Rinsky further claims that the defendants' alleged violations of her civil rights -- her substantive due right to bodily integrity and her equal protection right to be free from sex discrimination -- are actionable under the Massachusetts Civil Rights Act ("MCRA"), codified at Mass. Gen. Laws ch. 12, §§ 11H-11J, which provides a cause of action "[w]henever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth." Mass. Gen. Laws ch. 12, § 11H; see also id. § 11I ("Any person whose exercise or enjoyment of rights .

---

[5] Rinsky's allegations arguably make out a claim of a "serial violation" (rather than a systemic violation). As the Court noted in Provencher, "[a] serial violation occurs where a chain of similar discriminatory acts emanating from the same discriminatory animus exists and where there has been some violation within the statute of limitations period that anchors the earlier claims." Provencher, 145 F. 3d at 14. While Provencher was a Title VII case, the continuing violation doctrine applies as well to § 1983 claims.

. . has been interfered with, or attempted to be interfered with, as described in section 11H . . . .").[6]  The MCRA and § 1983 mirror each other in many ways, but with three important differences:  (1) the MCRA does not require any state action; (2) a claim under the MCRA requires a violation by threats, intimidation, or coercion; and (3) a municipality is not "a person" under the MCRA.  <u>Kelly v. LaForce</u>, 288 F.3d 1, 10-11 (1st Cir. 2002); <u>Howcroft v. City of Peabody</u>, 51 Mass. App. Ct. 573, 591-93 (2001).  Thus, as a threshold matter, Rinsky's evocation of the MCRA against the town is misplaced; defendants Motion to Dismiss Count I against Brookline is **GRANTED.** [7]

The remaining defendants -- Dobek and the University defendants -- offer two additional reasons that the MCRA claims against them should also be dismissed.  First, they argue Mass. Gen. Laws ch. 151C, §§ 2-3 provides the exclusive remedy for school-based sexual harassment. Second, they claim that the alleged conduct does not constitute "threats, intimidation or coercion."  I will address each in turn.

### F.    Exclusive Remedy

Mass. Gen. Laws ch. 151C ("151C") prohibits discrimination, including gender discrimination, by "educational institutions" and "vocational training institution."  <u>Id.</u> at § 1. Defendants claims that the remedial scheme offered by 151C is exclusive and, thus, preempts Rinsky's MCRA claims.  Defendants arrive at this conclusion by reference to Mass. Gen. Laws ch. 151B ("151B"), which does provide the comprehensive and exclusive statutory scheme for

---

[6] While Rinsky evokes both § 11H and § 11I of the MCRA, only § 11I provides a private right of action; only the attorney general may bring a claim pursuant to § 11H.

[7] Plaintiff is correct that the Supreme Judicial Court has not ruled on the question of whether a municipality is a "person" under the MCRA.  <u>See</u> <u>Swanset Dev. Corp. v. Taunton</u>, 423 Mass. 390, 391 (1996).  However, the Appeals Court of Massachusetts did hold that in <u>Howcroft v. City of Peabody</u>, 51 Mass. App. Ct. at 591-93, and the First Circuit has elected to follow <u>Howcroft</u>.  <u>Kelly</u>, 288 F.3d at 11.

resolving employment discrimination claims under Massachusetts law.  See Green v. Wyman-Gordon Co., 422 Mass. 551, 557-58 (1996); Charland v. Muzi Motors, Inc., 417 Mass. 580, 582-86 (1994).  However, as the Appeals Court of Massachusetts noted in Morrison v. N. Essex Cmty. Coll., "[t]here is nothing in c. 151C, however, that refers back to c. 151B.  Nor does c. 151C, in contrast to c. 151B, state that the provisions for the filing of sexual harassment claims with the Massachusetts Commission Against Discrimination (MCAD) are exclusive."  56 Mass. App. Ct. 784, 786 n.6 (2002).  Therefore, defendants cannot dismiss the MCRA claims against them on the grounds that 151C provides the exclusive remedy.[8]

### G.     Threats, Intimidation, and Coercion

The question of whether the challenged actions constitute threats, coercion, or force is an objective one. The Court must evaluate whether a reasonable person in that situation would have felt threatened, coerced, or forced.  Meuser v. Fed. Express Corp., 564 F.3d 507, 520 (1st Cir. 2009).  In aid of this analysis, the Supreme Judicial Court ("SJC") has provided the following guidance for the meaning of the words "threats, intimidation, or coercion:"

> "Threat" . . . involves the intentional exertion of pressure to make
> another fearful or apprehensive of injury or harm. . . .
> "Intimidation" involves putting in fear for the purpose of
> compelling or deterring conduct. . . . ["Coercion" is] the

---

[8] The University defendants are undoubtedly "educational institutions" falling under the purview of 151C. See Mass. Gen. Laws 151C § 1 (defining an "educational institution" as "[a]ny institution for instruction or training, including but not limited to secretarial schools, business schools, academies, colleges, universities, primary and secondary schools, which accepts applications for admission from the public generally and which is not in its nature distinctly private").  In this case, by evoking only 151c, the Town defendants seem to concede that Rinsky's MCRA against Dobek should also be analyzed through an educational -- rather than employment -- discrimination lens. Even if I were to conceive of Rinsky's internship as a type of employment, her claim would still not be barred by 151B.  In Lowery v. Klemm, the SJC held that 151B does not cover volunteers.  446 Mass. 572 (2006).  The Lowery court's rationale for excluding volunteers from 151B coverage was to prevent the "absurd or unreasonable" consequences of "giv[ing] volunteers greater rights than employees."  Id. at 578-79.  This would result, the court explained, if volunteers were covered under 151B because the workers' compensation statute, Mass. Gen. Laws ch. 152, precludes employees, but not volunteers, from bringing common-law actions for personal injuries, including emotional harm.  As workers' compensation would presumably not apply to interns like Rinsky, she, like a volunteer, is precluded from bringing a claim against Dobek under 151B.

application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.

Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 (1994). To be sure, as defendants note, the SJC normally also requires a showing of an "actual or potential physical confrontation accompanied by a threat of harm," Carvalho v. Town of Westport, 140 F. Supp. 2d 95, 101 (D. Mass. 2001). Nevertheless, the SJC has also recognized had "the Legislature wished to confine the remedial reach of § 11I to actual or threatened physical acts, it knew how to do so." Buster v. George W. Moore, Inc., 438 Mass. 635, 647-48 (2003). In that spirit, the SJC has held that economic coercion, standing alone, may be actionable under the MCRA. Id. at 648.

Rinsky alleges that Dobek threatened, intimidated or coerced her by assigning her to work one-on-on with Client B after Rinsky complained that Client B repeatedly touched her inappropriately. Dobek both supervised Rinsky and evaluated her work. She graded Rinsky's performance and directed her activities with clients. Rinsky asserts that when Dobek ordered her to "go with it," Compl. ¶ 43, she felt "forced . . . to work alone with Client B," id. at ¶ 45, fearing that "Dobek was using the sexual harassment as part of [her] evaluation," id. at ¶ 53. While Rinsky's subjective interpretation is not controlling, a reasonable person might have had the same reaction. Arguably, and I might add, just barely, Dobek's conduct as alleged comprised economic coercion. While I might ultimately find it did not, I cannot draw that conclusion at this stage.

Although also close to the line, I hold that the allegations made against the University defendants meet the standards of the MCRA. Rinsky alleges that the University defendants threatened, intimidated, or coerced Rinsky into continuing to subject herself to continual sexual

harassment from Client B.  While the University defendants encouraged Rinsky to file a complaint with the MCAD to seek redress for the sexual harassment she endured, they also allegedly chastised her for expressing her discomfort and told her that, if she were to bring up issues of sexual harassment at "problem resolution meetings," then "she would be demonstrating her lack of commitment to the social work profession."  Id. at ¶ 58.  The inference is that her evaluations would suffer, which would – again, arguably –  impact her job prospects.

Thus, the allegations against  Dobek and the University defendants barely suffice at this stage to make out a claim under the MCRA.  The motion to dismiss is **DENIED** with respect to Count II as to Dobek and the University defendants.

### H.    Count III: Assault and Battery (against Zimmerman, Perlstein, Kraus, and Dobek)

An assault and battery can exist in two forms.  First, it can be  the "intentional and unjustified use of force upon the person of another, however slight."  Com. v. McCan, 277 Mass. 199, 203 (1931).  Or, it can be "the intentional doing of a wanton or grossly negligent act causing personal injury to another."  Id; see Com. v. Sostilio, 325 Mass. 143, 145 (1949) ("Wanton or reckless conduct has been defined as 'intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another.'") (quoting Com. v. Welansky, 316 Mass. 383, 399 (1944)).

Rinsky's assault and battery claim cannot stand on the first theory, since clearly none of the defendants intentionally used physical force on Rinsky.  Client B alone intentionally touched her.  With regard to the second theory, however, Rinsky's claim against Dobek stands – again, at this preliminary pleading stage – while it falls for the University defendants.  Dobek allegedly

knew that Client B was touching Rinsky, yet she nonetheless "forced" Rinsky to "work alone with Client B on a weekly basis, including alone at his residence." Compl. ¶ 45. At the very minimum, Dobek's supposed actions could amount to reckless conduct. With regard to the University defendants, however, Rinsky has failed to plead sufficient facts to prove that their conduct was reckless. Although Rinsky has alleged that she provided her BU supervisors with documentation of each "occurrence," id. at ¶ 40, and informed them that the Town had failed "to provide her with a safe accommodation," id. at ¶ 55, she has neglected to plead precisely what the University defendants knew or should have known and whether the information they had suggested that the illegal touching would continue. Specifically, Rinsky needed to provide additional details about what exactly the University defendants had been told and what remedial actions they believed were or were not going to be taken. Without such allegations, her BU supervisors' actions cannot be characterized as wanton or reckless; defendant's motion to dismiss Count III against Zimmerman, Perlstein, Kraus is **GRANTED.**[9]

I.      **Count IV: Civil Conspiracy (against Zimmerman, Perlstein, Kraus, and Dobek)**

Rinsky asserts that defendants Zimmerman, Perlstein, Kraus and Dobek acted "in concert to allow and/or condone the assault and battery that she suffered through the actions of Client B." Id. at ¶ 121. A civil conspiracy can occur when two or more parties agree to assist in the commission of an underlying tort, which can be shown through 1) "concert of action;" or 2) "substantial assistance." Taylor v. Am. Chemistry Council, 576 F.3d 16, 35 (1st Cir. 2009). The "concert of action" conspiracy is a "coercive" conspiracy, which "requires the plaintiff to establish 'that defendants, acting in unison, had some peculiar power of coercion over [the]

_____

[9] Ultimately, the dismissal of this claim should have no bearing on the damages to which Rinsky is entitled, as I am sustaining the negligence claim against the University defendants. See infra Part V.

plaintiff that they would not have had if they had been acting independently.'" Soni v. Bos. Med. Ctr. Corp., 683 F. Supp. 2d 74, 100 (D. Mass. 2009) (quoting Jurgens v. Abraham, 616 F. Supp. 1381, 1386 (D. Mass. 1985)).  The second type of civil conspiracy is "more akin to a theory of common law joint liability in tort, and it is invoked to support liability of one person for a tort committed by another."  Soni, 683 F. Supp. 2d at 100 (internal quotes omitted).  However, for liability to attach under this theory, "there must be . . . a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act."  Id.

Under either theory, Rinsky's claim fails.  Rinsky has offered no facts that support any inference that Zimmerman, Perlstein, or Kraus somehow worked in concert, that their collective grouping somehow offered them greater power than they would have had individually, or that they had an express or implied agreement with Client B or each other.  Rinsky offers no allegations of collective planning or strategy discussions.  Rather, it seems that any of her BU supervisors could have told Rinsky that complaining would demonstrate a lack of commitment and the individual supervisor's condemnation would have carried the same import as their combined disapproval.  Furthermore, Rinsky's complaint suggests that Dobek acted independently from the BU supervisors, and offers no hint that Dobek had an agreement with Client B.  Therefore, defendant's motion to dismiss Count IV is **GRANTED**.

**J.      Count VI: Negligence (against the University defendants)**

The University defendants offer two reasons that the negligence claim should be dismissed:  First, they argued that they did not breach any duty to Rinsky.  Second, they assert that, even if they did, their actions were not responsible for Rinsky's injury.  The duty that the University defendants owed Rinsky was to take those actions that a reasonably prudent and

careful person would under similar circumstances. See, e.g., Wiesman v. Hill, 629 F. Supp. 2d 106, 113 (D. Mass. 2009). While, as defendants note, an employer does not always have the capacity to remedy harassment by a third-party, see Modern Cont'l/Obayashi v. Mass. Comm'n Against Discrimination, 445 Mass. 96, 109 (2005), Rinsky's BU supervisors clearly did here. They had the duty and power to ensure their students were not endangered at their internship. A reasonably prudent school supervisor would not knowingly continue to assign her student to a program where she would be harassed and assaulted. Moreover, if Rinsky's BU supervisors had either switched Rinsky's program or forced Dobek to alter Rinsky's case assignment -- actions they allegedly failed to take -- then Rinsky would not have continued to be subjected to Client B's unwanted touching. Thus, it would be inappropriate to dismiss the claim against the University defendants at this stage. See Leavitt v. Brockton Hosp., Inc., 454 Mass. 37, 45 (2009) (noting that causation is generally left to a jury to decide). Defendants' motion to dismiss Count VI is **DENIED.**

> **K.** **Count VII: Negligent Infliction of Emotional Distress (against the University defendants)**

A claim of negligent infliction of emotional distress requires proof of "physical harm manifested by objective symptomatology." Payton v. Abbot Labs, 386 Mass. 540, 557 (1982); see also Godette v. Stanley, 490 F. Supp. 2d 72, 81 (D. Mass. 2007) ("In order to survive summary judgment, a plaintiff must corroborate his claims of mental distress with sufficient objective evidence of harm."). Rinsky's complaint lacks any allegations of any objective manifestations of emotional distress with respect to any of the counts. She just asserts harm, an assertion far too general to support her claim of negligent infliction of emotional distress. Therefore, defendant's motion to dismiss Count VII is **GRANTED**.

**L.  Count VIII: Intentional Infliction of Emotional Distress (against Zimmerman, Perlstein, Kraus, and Dobek)**

A plaintiff bears a heavy burden when claiming intentional infliction of emotional distress ("IIED").  Specifically, a plaintiff must show:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, . . . (2) that the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community," . . . (3) that the actions of the defendant were the cause of the plaintiff's distress, . . . and (4) that the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable man could be expected to endure it."

Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976).  As much as Rinsky has alleged in her complaint no physical symptomatology as a result of emotional dismiss, she has not offered any evidence of "severe," much less moderate, emotional distress.  Her complaint is devoid of specific allegations of the emotional toll the harassment took on her.  Rather, she has admitted that soon after she left the BU program, she enrolled in a Masters program at Harvard.  Thus, she has failed to plead sufficient facts upon which relief can be granted. Defendants' motion to dismiss Count VIII is **GRANTED**.

**M.  Count IX: Breach of Contract (against BU)**

In Massachusetts, statements in 'handbooks, policy manuals, brochures, catalogs, advertisements, and other promotional materials can form the basis of a valid contract." Shin v. Mass. Inst. of Tech., No. 020403, 2005 WL 1869101, at *6 (Mass. Super. June 27, 2005) (citing Russell v. Salve Regina Coll., 890 F.2d 484, 488 (1st Cir. 1989).  The promise must, however, be "definite and certain so that the promisor should reasonably foresee that it will induce reliance." Guckenberger v. Bos. Univ., 974 F. Supp. 106, 150 (D. Mass. 1997).

In addition to its explicit terms, a contract between a University and its students, like any contract, imposes an implied obligation of good faith and fair dealing. Restatement (Second) of Contracts § 205 (1981); <u>Clark v. State St. Trust Co.</u>, 270 Mass. 140, 153 (1930). When determining these implied obligations, "[t]he agreement is to be read 'in a manner to give effect to the chief design to be accomplished by the instrument,' . . . look[ing] 'through the form to the substance and purpose of the agreement' and to mold the decree 'in accordance with what the parties may fairly be presumed to have intended.'" <u>Kerrigan v. City of Bos.</u>, 361 Mass. 24, 33 (1972) (quoting <u>Clark</u>, 270 Mass. at 152-53.

A student could "fairly" assume that a contract between her and her educator implied that she will be free of the sex discrimination that Title IX prohibits or that she will be protected and cared for by a school acting in *loco parentis*. However, here, Rinsky offers no fact to support such an allegation. Her complaint simply alleges the existence of a contract with BU based on school handbooks, manuals, and other written materials, wherein BU made -- either explicitly or implicitly -- "assurances concerning the quality of its educational programs and the due process rights of individual students." Comp. ¶ 141. Moreover, her briefing argues only that BU breached the contract by not offering an experience that matched her expectations for her social work program. Beyond that, Rinsky has failed to offer what exactly the alleged contract promised with regard to her educational environment, offering no quotations from the BU handbook, promotional materials, internship descriptions, or class syllabi. Nor has she supplied facts from which to fairly infer implied terms assuring protection against sexual harassment and assault.

In the one place she provides specific details about the content of the supposed contract,

her allegations work against her. Rinsky claims that "[a]s part of its student recruitment initiatives, and through written communications, including a handbook and promotional materials, the defendant university highlighted its internship program; in fact the defendant university promoted its internship programs as a core component of the MSW program." Compl. ¶ 10. Given this construction of the alleged contract, it seems that BU's only promise was to place Rinsky in an internship -- a promise that they fulfilled. If the supposed contract promised more, then Rinsky has failed to plead to supporting facts, and as such, defendants' motion to dismiss Count IX is **GRANTED**.

    **N.**       **Count X: Violation of Title IX of the Education Amendments of 1972 (against BU, Zimmerman, Perlstein, and Kraus)**

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance," 20 U.S.C. § 1681(a), and sexual harassment is a form of gender discrimination prohibited by Title IX, see Gebser v. Lago Vista Indep., 524 U.S. 274, 277 (1989). The statute's enforcement mechanism includes an implied private right of action, Cannon v. Univ. of Chi., 441 U.S. 677 (1979), but this private right of action extends only to claims against the educational institution itself, Lipsett v. Univ. of P.R., 864 F.2d 881, 901 (1st Cir. 1988). Therefore, defendants' motion to dismiss Count X against Zimmerman, Perlstein, and Kraus is **GRANTED**.

As Rinsky clarifies in her briefing, she is suing BU for a Title IX violation under a hostile environment theory, which requires five basic elements: "(1) that [the plaintiff] was a student, who was (2) subjected to harassment (3) based upon sex; (4) that the harassment was sufficiently severe and pervasive to create an abusive educational environment; and (5) that a cognizable

basis for institutional liability exists." <u>Frazier v. Fairhaven Sch. Comm.</u>, 276 F.3d 52, 66 (1st Cir. 2002). For all the reasons articulated above, Rinsky satisfies prongs (1)–(4), as defendants seemingly concede by focusing on only the fifth prong.

To satisfy the cognizable basis requirement, the plaintiff "must prove that a school official authorized to take corrective action had actual knowledge of the harassment, yet exhibited deliberate indifference to it." <u>Id.</u> at 65 (citing <u>Gebser</u>, 524 U.S. at 290). In <u>Davis v. Monroe County Board of Education</u>, the Supreme Court dealt with a situation of peer-on-peer harassment -- which is arguably different than educator harassment -- and explained that an educational institution is deliberately indifferent when its "response to the harassment . . . is clearly unreasonable in light of the known circumstances." 526 U.S. 629, 644 (1999).

Given that Rinsky's BU supervisors were allegedly on notice that she was subjected to regular sexual harassment at her internship, it is plausible that their failure to speak with Dobek, transfer her to a different internship, mandate that the program provide her a monitor whenever she work with Client B, or take any other similar action was unreasonable. At this stage, it would be premature to dismiss Rinsky's Title IX claim against BU. BU's motion to dismiss Count IX is **DENIED.**

## V.      CONCLUSION

For the foregoing reasons, I **GRANT IN PART** and **DENY IN PART** Defendants BU, Trudy Zimmerman, Judith Perlstein, and Brenda Kraus' Motion to Dismiss (document #3); and I **GRANT IN PART** and **DENY IN PART** Defendants Ruthann Dobek and Town of Brookline's Motion to Dismiss (document #13). In sum, the following claims remain (described as "sustained" counts or counts against which there was no motion to dismiss:

|  | Dobek | Town of Brookline | Zimmerman, Perlstein, and Kraus | BU |
|---|---|---|---|---|
| **42 U.S.C. § 1983 - Count I** | Sustained | Dismissed | Dismissed | Dismissed |
| **MCRA - Count II** | Sustained | Dismissed | Sustained | Sustained |
| **Assault & Battery - Count III** | Sustained | N/A | Dismissed | N/A |
| **Civil Conspiracy - Count IV** | Dismissed | N/A | Dismissed | N/A |
| **Invasion of Privacy- Count V** | N/A | N/A | N/A | Not Challenged in Motion to Dismiss |
| **Negligence - Count VI** | N/A | N/A | Sustained | Sustained |
| **NIED - Count VII** | N/A | N/A | Dismissed | Dismissed |
| **IIED - Count VIII** | Dismissed | N/A | Dismissed | N/A |
| **Breach of Contract -Count IX** | N/A | N/A | N/A | Dismissed |
| **Title IX - Count X** | N/A | N/A | Dismissed | Sustained |

**SO ORDERED.**

**Date:  December 27, 2010**        /s/ Nancy Gertner
                                   **NANCY GERTNER, U.S.D.C.**